UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TIESHA S. McNEAL                          CIVIL ACTION NO. 10-cv-1723

VERSUS                                    JUDGE STAGG

DAVID ZERKEL SALES, LTD., ET AL           MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Tiesha McNeal ("Plaintiff"), who is self-represented, filed this employment discrimination action against three defendants. Before the court are a Motion to Dismiss (Doc. 21) filed by Securitas Security Services USA; a Motion to Dismiss (Doc. 23) and a Motion to Dismiss Second Amended Complaint (Doc. 40) filed by UAW Local 2166; and a Motion to Dismiss or for Summary Judgment (Doc. 50) filed by David Zerkel Sales, Ltd. ("Zerkel"). It is recommended, for the reasons that follow, that the motions be granted.

**Summary of the Allegations**

Zerkel operates a clothing store inside the General Motors ("GM") plant in Shreveport, Louisiana. Plaintiff, a black female, went to work for Zerkel in 2006 as manager of the store. Her supervisor was District Manager Steve Leherman.

Leherman told Plaintiff that Zerkel had hired Brandy Riggs, a white female who was the daughter of a UAW Local 2166 member, to work in the store. Riggs had performance problems on the job, including using racial slurs in the presence of black customers,

tardiness, and other issues. Plaintiff wanted to discipline Riggs, but Zerkel prevented her from doing so. Plaintiff finally prevailed upon Zerkel to fire Riggs around December 2006. Local 2166 "expressed its displeasure of the firing," and its president and chairman "expressed a desire to discharge Plaintiff due to her race." Complaint, ¶¶ 5-8.

District Manager Leherman sexually harassed Plaintiff by making flirtatious comments, asking "if she liked to dance on tables and if she danced topless." ¶ 9. Plaintiff complained to management, but to no avail. ¶ 10.

Two GM employees began to sexually harass Plaintiff some time after February 2008. One man talked about his body parts, requested dates after being refused, and asked Plaintiff to visit him at his home. The other man showed Plaintiff graphic sexual pictures and made sexually offensive statements. ¶ 11.

Plaintiff complained to GM about the two men and was told to direct her complaints to Securitas, the security provider at the GM plant. Securitas investigated the complaints, and in the course of doing so, revealed details of the complaint to others and "encouraged and spread rumors of Plaintiff being of loose morals and having engaged in promiscuous sexual conduct." ¶ 12.

Steve Leherman fired Plaintiff on February 23, 2009, saying the company wanted to move in a different direction. Plaintiff alleges that Zerkel told her in December 2008 that Local 2166 wanted Plaintiff fired for not opening the clothing store at the proper times. Plaintiff alleges that these claims were contrivances created by the Union in retaliation for Plaintiff's role in having Randy Riggs fired. ¶ 13. Plaintiff adds in her Second Amended

Complaint that Alex Santana, an official with Local 2166, had a significant degree of influence in the operation of the clothing store but failed to take appropriate action to remedy problems in the store.

**Conversion to Summary Judgment**

Local 2166 and Securitas argue that they are not employers within the meaning of federal anti-discrimination laws, and Local 2166 submits an affidavit and other evidence to support its argument. Zerkel argues that it is a covered employer because it did not have the minimum number of employees required by Title VII. The argument relies upon an affidavit from David Zerkel and payroll records.

Defendants have filed motions to dismiss, but the reliance upon materials outside the complaint, as well as decisions such as Arbaugh v. Y& H Corp., 126 S.Ct. 1235 (2006) (employee-numerosity requirement for establishing Title VII "employer" status is element of claim and not jurisdictional requirement), require that the motions be converted to summary judgment to allow a consideration of all arguments presented by the motions.

Zerkel's motion to dismiss asks, in the alternative, for summary judgment. Plaintiff responded by filing a number of memoranda, to which she has attached more than 600 pages of documents. She has also filed a memorandum (Doc. 33) in which she appears to have copied at length from a section of a treatise that addresses the propriety of granting summary judgment against a self-represented civil rights plaintiff without informing the plaintiff of the requirement she respond by affidavit or other competent summary judgment evidence.

Plaintiff has demonstrated her knowledge of those rules, and she has attempted to take advantage of them by filing numerous documents. The undersigned also converts the pending motions to motions for summary judgment. Plaintiff will have the opportunity, when filing any objections to this Report and Recommendation, to submit any summary judgment materials other than those already filed.

**Rule 12(b)(6) and Summary Judgment Standards**

The arguments that rely on evidence outside the complaint will be decided based on the provisions of Fed. R. Civ. Proc. 56. Summary judgment is proper under the rule when the movant can demonstrate that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine dispute of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

Some of the defendants' arguments are true Rule 12(b)(6) challenges, which rely solely on the allegations in the complaint, as amended. To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to

less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

**Local 2166**

Local 2166 presents evidence that the union negotiated for GM to provide a clothing, shoe, and eyeglass store for plant employees, and for the store to be open during certain hours of the day. GM then contracted with outside vendors, such as Zerkel, to operate the store inside the plant. This was the store in which Plaintiff worked. Local 2166 was not a party to any contracts with Zerkel, and the union did not represent Zerkel's employees. See affidavits of Jose Santana and Arthur Douglas Ebey at Docs. 23 and 36. Local 2166 argues that this evidence shows it was not Plaintiff's employer within the meaning of Title VII.

Title VII defines an employer "a person engaged in an industry affecting commerce who has 15 or more employees ...., and any agent of such person ... ." 42 U.S.C. § 2000e(b). A defendant must meet this definition and have an employment relationship with the plaintiff. Deal v. State Farm, 5 F.3d 117, 118 n.2 (5th Cir. 1993). To determine whether an employment relationship exists, the court applies a "hybrid economic realities/common law control test." Id. at 118-119. When examining the control component, the most important part of the test, the courts have focused on whether the alleged employer had the right to hire, fire, supervise, and set the work schedule of the employee. Muhammad v. Dallas County Community Supervision and Corrections, 479 F.3d 377, 380 (5th Cir. 2007). The economic

realities component of the test looks to whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. Id.

Arthur Douglas Ebey, president of Local 2166, testifies by affidavit that Plaintiff has never been employed or represented by Local 2166. He adds that the union has no authority to control or affect the employment policies of Zerkel. Jose Santana, who served as shop committee chairman for Local 2166 during much of the relevant time, testifies that the agreement between GM and the union contains provisions that relate to the clothing store. For example, local demand number 29 requires that the store be open during certain hours, number 32 requires alterations of certain clothing be available, number 22 requires reasonable efforts to ensure that certain items are American and union made, and number 159 requires the vendor provide certain services with respect to safety eyeglasses. The union negotiated these terms with GM to ensure that employees have convenient access to the store, corresponding to their work shifts, and that the store provide certain specified goods and services. If the store did not comply with the provisions in the agreement between the union and GM, the union's only recourse was against GM. The store operator's contract was with GM, not the union.

Mr. Santana also testifies that he had contact with Plaintiff on several occasions during his tenure as shop committee chairman. Plaintiff sometimes told Santana that the store would have to close briefly during required operating hours, and she sometimes contacted him about the balance of an employee's perfect attendance voucher account. After

several calls on the attendance voucher issue, Santana suggested Plaintiff contact GM labor relations, as he had no authority in that area.  Plaintiff occasionally complained to Santana about the behavior of a union member in the store.  Santana testifies that, because it was his responsibility to resolve any potential disciplinary problems before they adversely affected a member's employment, he would speak with the member and advise him or her to exhibit proper behavior to avoid potential discipline by GM.  Santana denies that Local 2166 had any employment or representational relationship with Plaintiff at any relevant time.

Plaintiff alleged in her Second Amended Complaint that Mr. Santana and the shop committee, from the beginning of her employment, had a "significant degree of influence" in the operation of the store.  She said she was told by Zerkel management that if she had a problem with a GM employee not related to an account, voucher, or perfect attendance award, Plaintiff must call Mr. Santana.  Plaintiff makes a conclusory allegation that Zerkel "have a contract with the union" that was overseen by the shop committee and Mr. Santana, but the testimony from the union officials squarely denies this, and Plaintiff has not produced any summary-judgment evidence of such a contract.

Local 2166 obviously took an interest in seeing that the store was operated during hours and in a manner that complied with its contract with GM and served its membership. This resulted in some communication between union officials and Plaintiff about the operating hours of the store and, on occasion, misbehavior of union members.  Plaintiff may have felt, because of those communications, that the union had influence over store operations.  That may be true to a certain extent, just as it is with a major customer of any

institution, but there is no specific evidence to dispute the testimony of union officials that their only recourse for complaints about operation of the store was through GM. There is no evidence that the union had the ability to hire or fire employees, set their compensation, fix their work schedule, or engage in the other important factors that would lead to a finding that Local 2166 was Plaintiff's employer. There is also no basis to find that Local 2166 was "an agent" of Zerkel within the meaning of Title VII. The Fifth Circuit has held that the agent must be an agent with respect to employment practices and would be limited to supervisory or managerial employees to whom employment decisions have been delegated. Muhammad, 479 F.3d at 383. The undisputed evidence presented by Local 2166 denies any such role. Local 2166 is entitled to summary judgment on all claims under Title VII.

Plaintiff's complaint, in counts two and three that are directed at Local 2166, also invokes 42 U.S.C. § 1981. Plaintiff alleges that the union violated that statute when Plaintiff was discharged due to her race. Section 1981 affords all persons the right to "make and enforce contracts" without racial discrimination. Local 2166 has demonstrated that there is no genuine dispute that it was not an employer, the agent of an employer, or a party to any contract with Plaintiff. Accordingly, Local 2166 is also entitled to summary judgment with respect to the Section 1981 claim.

**Securitas**

Plaintiff does not allege that Securitas was ever her employer, and she does not direct her illegal discharge or retaliation counts against Securitas. She does, however, include Securitas in the count for sexual harassment under Title VII. Plaintiff has not alleged any

facts in her complaint that would indicate Securitas is an employer or agent that would be susceptible to liability under Title VII. There is no direct allegation, or summary judgment evidence, that Securitas had any control over Plaintiff's employment, so it is entitled to summary judgment with respect to any Title VII claims.

Securitas argues that any state law tort actions that Plaintiff might attempt to base on her complaint, and it does not appear she has directly asserted such a claim to this point, would be untimely under the one-year prescriptive period of La. Civil Code Art. 3492. Plaintiff alleges that she was fired on February 23, 2009. The alleged misdeeds of Securitas during the investigation would have occurred before that date. Plaintiff did not file suit until more than one year later, in November 2010. Her filing of EEOC charges in the meantime did not toll or otherwise affect prescription with regard to any state law claims. Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1990); Charles v. Galliano, 2010 WL 3430519, *3 (E.D. La. 2010). Accordingly, the tort claims against Securitas are time barred. Securitas is entitled to dismissal of all claims against it.

**Zerkel**

    **A. Timeliness**

Zerkel raises a number of defenses and arguments in response to the complaint. The first is that some of Plaintiff's older allegations are untimely under Title VII. In Louisiana, an employee must file an administrative charge of discrimination within 300 days of the alleged discriminatory conduct. Hartz v. Administrators of Tulane Educational Fund, 275 Fed. Appx. 281, *5 (5th Cir. 2008); Michel v. Saint-Gobain Containers, Inc., 2005 WL

3339568, *3 (W.D. La. 2005). Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. National RR Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2072 (2002).

Plaintiff filed a charge of discrimination against Zerkel on May 29, 2009. Plaintiff filed other charges against GM and others at earlier dates, but the only charge she filed against Zerkel was dated May 29, 2009. Accordingly, Plaintiff may not base Title VII claims on discrete acts of discrimination that occurred prior to August 2, 2008. That would exclude the events surrounding the Brandy Riggs employment, as Riggs was fired in December 2006. It also excludes the alleged harassment by two GM employees in February 2008.

Zerkel argues that the 300-day rule also eliminates any claim based on Mr. Leherman allegedly flirting with Plaintiff and asking her about topless dancing soon after she was hired in 2006. However, a hostile work environment sexual harassment claim is different from a claim based on a discrete act of discrimination. It involves repeated conduct, so that the unlawful employment practice does not occur on any particular day. It occurs over a series of days or even years, and the individual acts of harassment that make up the hostile work environment are often not actionable on their own. Morgan, 122 S.Ct. at 2073. For purposes of timeliness, it does not matter that some of the component acts of the hostile work environment fall outside the 300-day period, so long as an act contributing to the claim occurs within the timely period. Morgan, 122 S.Ct. at 2074.

Plaintiff's administrative charge is attached to her complaint, so it is a part thereof for all purposes, including assessment of a motion to dismiss. U.S. ex rel. Riley v. St. Luke's

Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004). Plaintiff alleged in her charge, and sometimes repeated in her complaint, that two GM employees sexually harassed her, and Plaintiff even had a brief affair with one of the men. One man talked to Plaintiff about his body parts, and another showed her sexually offensive pictures and requested dates. A third man allegedly rubbed Plaintiff's arm and asked for dates. Mr. Leherman allegedly "made sexually offensive statements until the time of [Plaintiff's] termination." Plaintiff adds that Mr. Leherman told her she "should not be so beautiful." Plaintiff went on to say that she filed sexual harassment complaints against the GM workers, but GM took no corrective action.

Zerkel argues that Plaintiff cannot respond to the timeliness argument by relying on a claim of sexual harassment or hostile work environment because she did not assert such a claim in her administrative charge or her complaint. As outlined above, however, the administrative charge did assert facts that might support a claim of sex discrimination based on a hostile work environment. Those allegations were incorporated in the complaint, which included a specific count for sexual harassment based on Mr. Leherman's actions and Zerkel tolerating sexual harassment by both Leherman and the GM employees. Complaint, ¶¶ 14-16. Plaintiff was not required to use the precise words "hostile work environment" in her charge to administratively present such a claim. Her pleadings are adequate to survive the timeliness challenge to her Title VII claim, and Zerkel has not mounted a summary judgment attack on its substantive merit.

### B. Number of Employees

Zerkel makes a summary-judgment argument that it was not an "employer" subject to Title VII because it did not have 15 or more employees during the relevant time. The term "employer" is defined in Title VII as a person engaged in an industry effecting commerce "that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year ... ." 42 U.S.C. § 2000(e)(b). The "current" year referred to in the statute is the year in which the alleged discrimination occurred. Dumas v. Town of Mt. Vernon, 612 F.2d 974, 979 n.4 (5th Cir. 1980).

Zerkel, points to an affidavit (Doc. 50, Ex. 4) from Vice President David Zerkel, together with attached payroll records, in which David Zerkel testifies that the company is a small, family-owned business that employed between six and 13 employees during any week in 2008 or 2009. That satisfied Zerkel's summary judgment burden, shifting to Plaintiff the obligation to produce summary-judgment evidence to create a genuine dispute on this point that would require a trial for resolution.

Plaintiff has not submitted any competent summary-judgment evidence on this issue. She does make conclusory assertions that the payroll records do not correctly reflect the number of employees that worked in similar stores or who worked "under the table." Conclusory statements, even if in an affidavit, do not provide facts that will counter summary-judgment evidence, and testimony based on mere conjecture is insufficient to create a genuine dispute of material fact. Roberts v. Cardinal Services, Inc., 266 F.3d 368, 376 n.33 (5th Cir. 2001). Plaintiff also talks about cases in which courts have pierced the corporate veil or where courts addressed a situation where a company has split itself up to

avoid liability under federal anti-discrimination laws. She has not, however, offered evidence of any specific facts that would plausibly suggest the application of those exceptions in this case.

Zerkel has established that it is entitled to summary judgment on any Title VII claims against it based on Plaintiff's 2009 termination or other acts in 2008 and 2009. This also leads to the dismissal of a Title VII hostile work environment claim because Zerkel was not an employer under the statute in 2008 or 2009. Zerkel has not submitted evidence regarding its number of employees in 2007 or earlier years, but acts of sexual harassment or that would otherwise create a hostile work environment during those years would be untimely given the May 29, 2009 filing of the administrative charge. Accordingly, Zerkel is entitled to summary judgment with respect to all Title VII claims against it.

**C. Section 1981**

Two of Plaintiff's counts that assert illegal discharge invoke 42 U.S.C. § 1981, in addition to Title VII. Zerkel attacks any claim under Section 1981 on the grounds that Plaintiff's allegations do not plead an actionable claim. Section 1981 entitles all persons within the jurisdiction of the United States to the same rights to enter in and enforce contracts as those "enjoyed by white citizens." 42 U.S.C. § 1981. The elements of an employment discrimination claim under the statute are identical to those for a claim brought pursuant to Title VII. See Roberson v. Alltel Information Services, 373 F.3d 647, 651 (5th Cir. 2004); Spears v. Louisiana, ___ F. Supp. 2d ___, 2011 WL 552276, *8 (M. D. La. 2011). The Title

avoid liability under federal anti-discrimination laws. She has not, however, offered evidence of any specific facts that would plausibly suggest the application of those exceptions in this case.

Zerkel has established that it is entitled to summary judgment on any Title VII claims against it based on Plaintiff's 2009 termination or other acts in 2008 and 2009. This also leads to the dismissal of a Title VII hostile work environment claim because Zerkel was not an employer under the statute in 2008 or 2009. Zerkel has not submitted evidence regarding its number of employees in 2007 or earlier years, but acts of sexual harassment or that would otherwise create a hostile work environment during those years would be untimely given the May 29, 2009 filing of the administrative charge. Accordingly, Zerkel is entitled to summary judgment with respect to all Title VII claims against it.

**C. Section 1981**

Two of Plaintiff's counts that assert illegal discharge invoke 42 U.S.C. § 1981, in addition to Title VII. Zerkel attacks any claim under Section 1981 on the grounds that Plaintiff's allegations do not plead an actionable claim. Section 1981 entitles all persons within the jurisdiction of the United States to the same rights to enter in and enforce contracts as those "enjoyed by white citizens." 42 U.S.C. § 1981. The elements of an employment discrimination claim under the statute are identical to those for a claim brought pursuant to Title VII. See Roberson v. Alltel Information Services, 373 F.3d 647, 651 (5th Cir. 2004); Spears v. Louisiana, ___ F. Supp. 2d ___, 2011 WL 552276, *8 (M. D. La. 2011). The Title

VII inquiry is whether the defendant intentionally discriminated against the plaintiff. Roberson, 373 F.3d at 651.

Zerkel argues that Plaintiff has not alleged facts to constitute a prima facie case of race-based discrimination, retaliation, or harassment. The prima facie case is an evidentiary standard used in assessing motions for summary judgment; it is not a pleading requirement. Swierkiewicz v. Sorema N.A., 122 S.Ct. 992 (2002). Accordingly, Plaintiff need not plead facts establishing every element of her prima facie case to survive a motion to dismiss, but under Twombly she must state a plausible claim for relief. Moore v. Metropolitan Human Service District, 2010 WL 1462224, *3 (E.D. La. 2010).

There is a four-year period of limitations applicable to Section 1981 claims that are based on post-hiring actions, Dean-Ball v. Garry McKinney Auto Group, 2005 WL 2304501, *4 (W.D. La. 2005), so Plaintiff may base a Section 1981 claim on allegations that occurred on or after November 15, 2006. Plaintiff's first allegations that might give rise to a race-based discrimination claim regard Plaintiff's attempts to discipline Brandy Riggs, the daughter of a Local 2166 member (who was a friend of the local union chairman and president). Riggs allegedly had performance problems, including the use of racial slurs in the presence of customers. Zerkel initially prevented Plaintiff from disciplining Riggs, but Plaintiff eventually prevailed upon Zerkel around December 2006 to fire her. Plaintiff alleges, after discussing the firing of Riggs, that the president and chairman of Local 2166 "expressed a desire to discharge Plaintiff due to her race." No facts are offered to support the assertion that the desire was based on race. In any event, Plaintiff was not fired at that

time. Plaintiff's complaint goes on to allege sexual harassment, with no reference to race discrimination, and ends with Plaintiff being fired in 2009. Plaintiff alleges that the owners of Zerkel told her several months earlier that Local 2166 wanted to fire Plaintiff for alleged deficiencies in opening the clothing store at the proper times. Plaintiff asserts that these were "contrivances" created by the union in retaliation for Plaintiff's role in discharging Brandy Riggs.

Plaintiff's complaint then sets forth her counts. Counts two and three refer to racial discrimination. Count two, illegal discharge, alleges that Zerkel and the Union violated Section 1981 "by conspiring to discharge and discharging Plaintiff due to her race." Count three, retaliation, asserts that Plaintiff was fired in retaliation for reporting and opposing sexual harassment "and for protecting her rights to be free of a racially hostile working environment."

Plaintiff's allegations of race-based firing or hostile work environment are not supported by enough facts to overcome the Rule 12(b)(6) challenge. In a similar case, affirming the dismissal of a racial discrimination complaint, the Fifth Circuit noted that, to survive a motion to dismiss, the complaint does not need detailed factual allegations, but it does need more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Richards v. JRK Property Holdings, 405 Fed.Appx. 829, 830 (5th Cir. 2010). Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 831. The Plaintiff in Richards alleged that she was fired and she believed it was because of her race. She alleged no facts to support her belief. The Court

found that her "assertion of racial discrimination is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss." Id. The same is true in this case. Plaintiff is self-represented, but she has demonstrated that she is more than capable of filling and filing many pages of paper. Yet she has failed, despite two amendments to her complaint, to allege facts that would plausibly support a claim of racial discrimination.

**Conclusion**

The motions discussed above address all claims asserted in the complaint, as amended, so dismissal of the entire complaint is warranted. Plaintiff obviously feels that she was mistreated, but the employment discrimination laws do not vest in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of business decisions made by employers. They do provide a cause of action when an employer, as defined by the law, engages in certain forms of discrimination. Plaintiff has not established a basis to go forward with any such claims.

Accordingly;

IT IS RECOMMENDED that the Motion to Dismiss (Doc. 21) filed by Securitas Security Services USA; the Motion to Dismiss (Doc. 23) and the Motion to Dismiss Second Amended Complaint (Doc. 40) filed by UAW Local 2166; and the Motion to Dismiss or for Summary Judgment (Doc. 50) filed by David Zerkel Sales, Ltd. ("Zerkel") be granted and that all claims in the complaint, as amended, be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of May, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE